19-1823. Ms. Jones you may proceed. I may please the court counsel Marie Miley Jones for then District Attorney now Court of Common Pleas Judge Nancy Vernon and Fayette County. I appreciate the opportunity to present the case even under less than typical circumstances. I hope all on the court counsel and their families are well these days. Your Honors, this appeal addresses the important defenses of prosecutorial immunity and qualified immunity. Matters that this court is no doubt familiar with and addresses regularly as demonstrated frankly by two opinions issued just yesterday covering each topic. I plan to address those substantive issues in this appeal Your Honor and unless requested or needed not focus yet on the jurisdictional questions in order to efficiently utilize my time. Since you're on top of our jurisprudence Ms. Jones may we start with the fourth issue because it would seem that the Fogel opinion forecloses the argument about the dismissal of Weimer's municipal liability claim. Would you agree? Judge Hardiman I was going to indicate that given the court's decision I would not be arguing that issue today. Okay very good that makes things a little bit easier. All right which of the other issues do you want to start with? Thank you. I'll start with qualified immunity. This issue and this defense as the court is familiar protects government officials from being held liable when their conduct does not violate clearly established rights and there's a two-prong test that the courts use in assessing this defense whether the facts make out a violation of a constitutional right and then whether that right was clearly established at the time of the alleged misconduct. That second prong could be said another way that any reasonable official would know the conduct was unlawful at the relevant time and I think that prong is a good place to start because you can take either prong in making this assessment relative to the two issues that we focus on. The first of those two is the bite mark evidence and actually when you look at the trial itself the bite mark evidence was presented in trial it was raised in this complaint in the and so really there is an argument that prosecutorial immunity would bar it and part of that claim was in fact dismissed by the trial court here but to the extent it's been raised by us on the qualified immunity analysis I go to that point first. Our position is that the issue was not clearly established at the time that the use of this kind of evidence would violate any Miss Jones let me just interrupt you before you get into the merits of that because I'm I'm wondering whether the county waived the issue because I'm looking at appendix 137 the brief in support of motion to dismiss says given that this was plaintiff's third attempt to set forth viable causes of action these claims should be dismissed with prejudice and plaintiff should only be permitted to proceed on her malicious prosecution claim against Vernon for her alleged involvement in securing bite mark evidence and her supervisory liability claim against the county that seems to be not just a forfeiture but a waiver that's that's an intentional relinquishment of that argument is it not? I don't think but I'm sorry Miss Jones you're cutting in and out I don't know if we have an issue with the connection could you try it again? Sure judge I indicated that I was looking for that particular site on page 137 of the appendix which is not the same for me but that issue was in essence on behalf of Judge Vernon not the county so maybe I misunderstood your question. Does that doesn't that mean that Judge Vernon waived it then? No no I don't think she waived it at all I don't think she waived it at all if you look to the appendix 133 I'm sorry 129 at page appendix 129 and at the original appendix page 78 it was challenged and was raised in terms of indicating in the briefs in the arguments that we felt that the bite mark evidence was in fact dismissed for the most part at the underlying case but to the extent the notice of appeal addresses qualified immunity generally and the order from which the appeal is raised indicates that the bite mark evidence is evidence that should be included in the more specific pleading of the next amended complaint we believe that issue is clearly preserved so taking that backwards the order from which this appeal was raised indicated that the bite mark evidence is evidence that could be addressed or needed to be addressed by Clymer in her second amended complaint and that when we raised the bite mark evidence so I believe based on page 129 of the appendix and page 78 of the appendix and the order from which the appeal was taken that that issue has been preserved okay so in looking at that evidence there have been cases in this circuit even that have said that this type of evidence this bite type evidence is viable evidence what Weimer presents no case law relevant to the time period to show it was not viable when it was first presented they're utilizing information from the criminal trial where later in 2014 or 2015 the expert walked back the decisions based on bite mark evidence and therefore under that prong of saying whether at the relevant time the law was clearly established we believe the record's clear that it was not clearly established back in the 0304 time frame and that any reliance by the district attorney at that time in utilizing it at trial was appropriate and to raise that issue now for her use of that evidence we think violates the qualified immunity standards okay I'll find you miss jones uh if you could moving to the civil rights conspiracy claim I'm interested in well under the civil rights conspiracy claim in the September 2018 order the claim against was dismissed without prejudice with leave to amend and then in the April 2019 order the second amendment complaint alleges investigatory activities by district attorney Vernon uh to support the civil rights conspiracy claim so you're challenging both the denial of prosecutorial or absolute immunity for some of and challenging qualified immunity to the investigatory role what's your argument what's your argument as to those two points because I think there's two vital points here as to whether or not these claims are allowed to proceed both the prosecutorial side and whether or not you raise the qualified immunity argument as the investigatory activities uh judge fisher the court permitted leave to amend the order of the 2018 ruling and so therefore on those issues that order was not yet final right oh I do that okay so until the order on the second motion to dismiss is issued the 2019 order those determinations made more clearly I will say it with more detail by the trial court are now in our view appealable okay so you have but your your appeals to them your your your argument is that the conduct which was within her prosecutorial responsibility such as approving the filing of a complaint that she's entitled to prosecutorial immunity yeah the second amended complaint however uh alleges various activities that may not be prosecutorial but may be investigative and I wonder whether or not there is any claim to immunity that's remaining as to them we believe there is uh your because the differences between the first amended complaint and the second amended complaint on all of these points that are relative to both defenses of immunity are very very limited and in very few paragraphs and so when you look to the ability to say that that first order was not final as all of these points and for all of those reasons we're going to look at anything more added to the second amended complaint to assess those defenses our position is some of the arguments remain i.e. bite mark evidence failure to intervene were not clearly established and others we can look at both pleadings and both decisions and say for example the prosecutorial immunity arguments that the facts as pled in the change the character function argument of the claim and in relation to the claims such that the immunity still shouldn't be applicable and I can get to those specifics on the prosecutorial immunity I just had been in the qualified immunity category your your main complaint though about the court's opinion is that she lumped everything together and said everything's investigatory and everything should go forward and you're saying no a lot of it's prosecutorial should we not send it back to the district court and say please parse out all of these different pieces of conduct and were they conducted by Vernon or others and and decide which is prosecutorial and which is not and whether qualified immunity as to the investigatory investigative is permitted but gender Adele that certainly would have been an an easier approach and I think which especially in light of Fogle which instructs quite a lot about prosecutorial versus investigative and it also instructs on the good use of rule 12e which is a good lesson learned for all of us on the council side but I do think however Judge Randall that it still can be assessed I'm not saying that I don't think our arguments fly and and that is because of the very limited differences between the two complaints that first order by Judge Kelly in many respects granted the motions but gave leave to amend to them fix is not the right word to to attempt to address where the differences on this investigative versus prosecutorial function could be found but she did not in every instance at least say you know there's never going to be an assessment that could work so she really started in the favor of the the immunity defense and then gave leave to say you can you can add more if you want and I think it's important I'm just confused as to what you're asking us to do I'm asking you to find that the qualified immunity defense on the failure to intervene and bite mark evidence applies and therefore those claims are are out for for good forever and that the prosecutorial immunity can in fact still apply based on the limited changes that were made to the second amended complaint so we think those defenses are still viable to the specific claims for this court to be able to analyze it I do not disagree that a more specific delineation of how each of those allegations were or were not deficient would have been useful yeah I mean it's hard for us to review a a statement by the court that this is all investigatory we don't know what she was looking at we don't know what she was deciding and as Judge Fisher points out we at least know the filing of the criminal complaint is not an investigative you know that's prosecutorial so we have questions as to what was she deciding right and I think your honor I don't disagree but but at least when you look at her initial order that was then made final by the second order you know she says for example on the on the point Judge Fisher was raising on the conspiracy claim you know it states a plausible claim including as to the bite mark evidence so so she's raising for example an area where we think you can now come in and make a determination on the qualified immunity argument that even though she didn't delineate it on that point it doesn't matter and and you pointed out another one as did Judge Fisher on the prosecutorial immunity for the approval of the complaint it doesn't matter those can't fly either way so what about the failure to intervene claim? Sure I think that one's particularly clear and particularly direct because there is no third circuit law establishing that a district attorney could be liable for failing to intervene in a what might be characterized as a reckless investigation your court's decision in the Ginesse case made clear there was no real reckless investigation claims that could lie this isn't a case where there's a there's no knowing violation of law by the district attorney here there's been repeated findings even a trial court admitted there's no applicable third circuit law that says this is a viable cause of action and then Weimer can't point out any either and she even said she even quoted the Fogel opinion saying that in extension after the fact right she did and it was an 18 or 19 decision and frankly your your court's decision at Fogel didn't even go to that point so I still think that's a viable argument that there's no failure to intervene claim no matter what you know investigatory non-investigatory allegations are in this. All right so we think those can I try to let me try to sum up where we are because we've got a lot of different issues flying around it sounds like you concede that a remand is appropriate for a do-over in essence in light of the guidance in Fogel but that you would like us to knock out a couple of the clearer claims for example the and the most sort of notable one is this failure to intervene claim is that is that your position? Your honor I don't think I'd go so far as to say I concede that but I would agree that you could knock out certain claims I still think you can make the assessment even under Fogel's decision and other issues on the on the qualified and prosecutorial immunity but there's certainly some that are crystal clear where others I think have you know strong arguments. All right but at the very least there's agreement I think that the district court did not engage in the parsing of conduct required in order to separate out what are the prosecutorial actions or events and what were investigatory actions or events. I certainly would agree to that we're trying to identify a few of those relative to the prosecutorial immunity argument. Okay all right we'll hear you on rebuttal let's hear from Mr. Culleton. Okay good morning your honor may it please the court my name is Joe Culleton and I have the pleasure of representing the appellee in this matter Crystal Weimer. As you know Crystal was wrongfully convicted for a murder that she did not commit and was imprisoned for more than 11 years before with the assistance of the Pennsylvania Innocence Project and others she was finally exonerated and released. I agree that the Fogel decision which issued yesterday strongly informs and supports the arguments that Ms. Weimer has raised the substantive arguments on this appeal but before I turn to those you know I think that the appeal is properly dismissible because it's improper it's untimely and it's premature. I disagree with the characterization of the first motion to dismiss opinion as somehow being a continuation of the second motion to dismiss opinion. The first dismissal opinion made definitive findings and conclusions. I respectfully believe that the district court did parse out certain conduct you know for example the bite mark evidence they found in the first she found in the first motion to dismiss opinion that the bite mark evidence was investigatory in nature and therefore not subject to absolute prosecutorial immunity. On the other hand she found that Judge Vernon's statements made to the to the jury during closing where she lied regarding jailhouse snitches and not asking for anything in return for their testimony she parsed that out and said that that is entitled to prosecutorial immunity. So I do think she made... But the judge specifically said with respect to qualified immunity and I'm looking at page 18 and 19 of her opinion that she wants to wait. She says in general before it can be determined whether she's entitled to qualified immunity on this issue. So she's not deciding she's not conclusively deciding the issue is she? I agree with you on the the issue of qualified immunity your honor and I think that is the reason why I think that's really the only properly appealed issue before the panel. I think you lack jurisdiction. Yes I think you lack jurisdiction. It's our position you lack jurisdiction as to the absolute prosecutorial immunity issues. The municipal claim has been taken care of but I don't think that she timely appealed those issues because they were dealt with in the first motion to dismiss opinion and they were not argued at all. Just hold on one hold on one second let me make sure I understand your argument because I heard you to argue we lack jurisdiction over the appeal. Now I hear you to be arguing we lack jurisdiction over parts of the appeal. Is that right? That's right there are certain aspects of the appeal. Is that absolute immunity is the part we lack jurisdiction over? Yes that's our position. And did the district court address absolute immunity in its second opinion? Not at all that that issue and those arguments regarding absolute prosecutorial immunity were raised only in the first motion to dismiss briefing. They weren't raised at all in the second and and absolute was not addressed at all in the second opinion so it left. Yes but weren't some of the activities which were alleged in the second amendment complaint to be investigatory activities really prosecutorial activities such as approving the complaint to which DA Vernon was entitled to prosecutorial immunity and had been properly raised in both motions to dismiss? Well that was that that allegation was not added in the second amended complaint. There were I agree with Ms. Jones that there were a finite amount of additional allegations in the second amended complaint and they largely related to additional investigatory acts of Vernon that we learned about in a police report that was so the the approving of the of the criminal complaint was already addressed it was already in the first amended complaint. There were activities there were activities which you alleged in the second amended complaint that related to the prosecutorial activities that led to the filing of the complaint. Well to the extent that there were allegations like that that were added in the second amended complaint that they were not argued in Ms. Jones's second motion to dismiss. There were no prosecutorial immunity arguments that were raised by the appellants after the second amended complaint was filed and therefore there were no there was no discussion by the district court of absolute prosecutorial immunity in her second opinion. And so that the what her findings were in the first opinion remain undisturbed and they were you know rulings that she set forth more than six months before this notice of appeal was taken which is why I think he lacked jurisdiction over that issue. Okay I'm I'm confused then as to maybe what maybe I'm not the only one confused I'm confused then as to what it is you say we have before us. The issue of qualified immunity. All the are you saying that we have jurisdiction over all of the qualified immunity questions including whether or not the investigate the bite mark evidence whether or not we have she's entitled to qualified immunity involving her involvement with the bite mark evidence? I don't even think you have jurisdiction over that aspect of the qualified immunity because that was addressed those allegations bite mark allegations were addressed during the briefing in the first motion to dismiss and they were found she judge Kelly parsed the bite mark allegations in the first motion to dismiss and found that they were investigatory in nature so she had already ruled on that and again that was not timely appeal but even if she but Judge Kelly in that first order the September order said she's not entitled to qualified immunity on the bite mark question right? Prostitutorial immunity she's not entitled to prosecutorial immunity. She held off her ruling on qualified immunity. Okay so then you have the second order. Yes. And you have the more you have more specificity in your second amended complaint as to the investigatory activities that you were alleging DA Vernon could be liable for right? That's correct. And the court in that second order denied qualified immunity as to those activities and some one of those activities involved the bite mark. Well I think you know as I read the court's second opinion she's not denying qualified immunity as to certain allegations what she's saying is at the motion to dismiss stage viewing the factual allegations in the light most favorable to Ms. Wymer that you have pled enough regarding Vernon's involvement in the investigatory process that the court finds that this claim should be permitted to be developed during discovery which is isn't that what qualified immunity partially is about that the right to be able to be immune from having to go through the civil litigation process if in fact the constitutional violation either didn't exist or in fact if it wasn't clearly established. I think qualified immunity you know that does have those concepts but only under very specific conditions and restrictions and the Fogel case you know cites that you know immunity defenses will often require the benefit of discovery. That's citing the Russell opinion and it's and that is what Judge Kelly is is saying here is in order for me to make a reasoned analysis of whether or not you're I'm going to need the benefit of discovery and I'm going to allow you to develop that issue in discovery because what we need to to determine is were Vernon's actions reasonable and in connection with the constitutional rights as she understood them at the time and we're not going to be able to know that until we can develop that further in discovery but at this at this stage taking our factual allegations and the like most favorable to Ms. Wymer we've established enough that she's done enough investigatory work in helping the police in this reckless investigation that we should be allowed to develop that record to address that issue of qualified immunity after discovery and that's that's Forsyth's opinion where it you know it says this report's denial of a claim of qualified immunity is appealable on an interlocutory basis to the extent that it turns on an issue of law and she did not decide here that qualified immunity does not apply as a matter of law. What she did was make a factual determination that our factual allegations plead sufficient investigatory acts that we are now entitled to the discovery that these immunity issues often require. At summary judgment if she makes the decision that issue is properly before this could potentially properly before this court but right now it's premature because she has not made a qualified immunity decision on a legal issue. Is it is approving the criminal complaint investigatory? I think based on FOGL that action is not. Right, so there's a reversal on that discrete issue at the very least, right? We explain to the district court why approving a criminal complaint is prosecutorial and therefore immune? Well to the extent that the court is inclined I don't know that the court held that the approving of the criminal complaint was you know was not prosecutorial but to the extent that the court is inclined to remand and with instructions to further parse out the factual allegations I would ask that the court ask Judge Kelly to apply do the parsing consistent with the standards that were just dictated in FOGL and that would also include reassessing the allegations regarding the jailhouse snitches because I think in light of FOGL Judge Vernon's actions in relation to those jailhouse snitches are investigatory in nature. That all makes perfect sense to me speaking just for myself but shouldn't we at the least kick out the failure to intervene claim for reasons that were suggested at least I would argue by the questions from my colleagues about the absence of any sort of extant law controlling the behavior of Vernon on that issue? Well I think the failure to intervene claim is going to depend on the reasonableness of her actions in light of what Vernon knew at the time. Yeah but you need clearly established law saying that she must intervene and I don't see any can you point to any anywhere? Well I think just the constitutional protections that are afforded to Ms. Wymer that she has the constitutional right to be free from a reckless investigation or to have her rights you know trampled on by people that are soliciting false testimony using patently unreliable evidence. That's too general we're talking specifically about intervening and I mean and these rights have to be well defined in order to have been clearly established. Well the court pointed out Judge Kelly's own opinion says it would be an extension of law. I agree with that and as I was just going to say as the court pointed out there was not a case law specific to that issue but I agree with her that it is an extension of the new case law and what's in that you know more recent opinion is something that you know should Judge Vernon should be held accountable for even back then. It's not you know. How can you say that when it's not clearly established? Well it's not dictating any case law that a reasonable reasonable district attorney should have known be it then or in 2001. You're making a policy argument that many agree with but it's the opposite of what the Supreme Court has told us to do. The Supreme Court time and again has reversed circuit courts for doing two things wrong. Number one holding people potentially liable when there's no clearly established law and secondly defining the right at issue at too high a level of generality saying things like due process, equal protection, etc. The High Court is requiring a case on point, aren't they? I think it's reasonable to extend the recent decision the way that Judge Kelly did. I respectfully would take that position. I understand your Honor's question but I cannot point to specific case law prior to this as you know as I said Judge Kelly conceded in her opinion and I can't disagree with that statement but I think it is reasonable to extend it. Would you? One question I have for you if you could answer this. The Mon-El claim, the fourth claim. Municipal liability? Municipal liability claim, yes. I think that was essentially withdrawn, wasn't it? Municipal liability, supervisory liability claim. What remains? I'm not sure I understand. I thought that earlier in the argument Ms. Jones said that she was the appeal related to that claim so I'm not sure what you're asking. I'm just asking notwithstanding Ms. Jones' concession, what remains on the supervisory liability claim? It's a claim against Fayette County and or a claim against DA Vernon? It's a claim against Fayette County. It would be viable, wouldn't it? Because they can't claim the derivative prosecutorial immunity so it's a viable claim. The defendants have withdrawn the challenge, isn't that correct? Yeah, I'm asking what remains and I'm asking counsel what exactly that claim is. Is it against Fayette County or is it against DA Vernon? It's against Fayette County relating to their policies and practices that were in place that there's allegations in there regarding not just Ms. Wymer but other persons who were wrongfully convicted and imprisoned based upon these deficient policies and practices that allow their law enforcement officers and district attorneys to behave in this manner and so they should be held liable for their actions because they're responsible for those officials actions and their policies and the procedures that they have in place encourage, frankly, this inappropriate behavior. You also have a specific, I may ask you the question, do you have a specific Monell claim against DA Vernon? I don't think it's a Monell claim against Vernon. It's a supervisory liability claim. Oh, supervisory liability, yes, we do have assert allegations of supervisory liability because she was the district attorney and as the district attorney, you know, she was directly setting policies for the county office, the district attorney's office, and the factual allegations show that she was, to some degree, supervising, instructing, authorizing the actions not just of people within her office but also the police investigation. And it's to that claim that that's what I understood Ms. Jones conceded at least the appellate claim as to that. She can clarify that later. Right. All right, thank you very much, Mr. Culleton. Why don't we hear from Ms. Jones and would you start where Judge Fisher left off there with that issue? I understood your concession to be that we lack jurisdiction to consider it and we wouldn't get into the merits of that, but I may be wrong on that. I indicated that in light of FOGL, I felt the jurisdictional challenge on the county, municipal, or Monell claim was not worth the court's time. I do not believe it's a viable claim against DA Vernon for supervisory liability on the basis of the law in that area. That's getting to. Yes, it is not because the DA can't be responsible as a claim for the municipality. I still challenge the viability of that, but that's not one I think I could raise to you here because my municipal liability claim to you was based on the immunity issue. So, right. So, Your Honor, Judge Fisher, I agree with you that that's not a viable claim. I do want to point to two points generally. One is on the jurisdictional challenge about absolute immunity. I disagree with counsel in saying that we did not preserve that and I cite to a couple of pages in the record to make that clear. Appendix page 78 is the order on the first motion. It did grant the motion initially giving leave to address investigatory conduct on multiple claims, the malicious prosecution and the civil rights conspiracy to which we had raised immunity, prosecutorial immunity. In our brief in support of the motion to the second amended complaint, beginning at appendix page 122, we do again raise, perhaps using a multitude of words, but we raise that the additional acts that were supposed to be added to show factually these were investigatory actions versus prosecutorial is again preserved. And so, that continuing issue that we set forth in our briefs and I pointed out earlier would still stand. That is the first order gave leave to amend on those points, the second order decided them, and our notice of appeal raises both immunity issues, so we believe those are still in play. And on those points, there were really four. The courts already addressed the approval of the complaint point and I just want to very briefly pinpoint a couple of others. I think in FOGL, what's helpful in that case, despite having been a party in it, a representative of the party, that in assessing the specific facts for purposes of whether they're investigatory versus prosecutorial and looking at the function served, it also decides that it's necessary to make a connection to the claim of the plaintiff. And so, you look at the claim of the plaintiff and then the function for purposes of making the determination if immunity applies. And in most of these issues, there's, first of all, no affirmative acts by DA Vernon, and secondly, they don't relate to the claim of the plaintiff. Many of the acts relate to, for example, evidence that was presented to her about a different individual, a Mr. Stenger, who might have been a potential target. So, I think it's important with FOGL's instruction of assessing the claim of the plaintiff and then the function to see if immunity applied, that the presence at the crime scene, I mean, that would be every DA, frankly, but there's no affirmative action pled, no specifics of what she did or didn't do there that would connect to something involving Ms. Wymer. The presence at a meeting with Mr. Stenger's lawyer, again, presence in a meeting, the presence at an interview where a prior statement had already been gathered by the police, where DA Vernon's not affirmatively doing something based on the limited additional facts pled. So, I think the instruction in FOGL can be useful and allow this the approval of the complaint issue to say that immunity, prosecutorial immunity, does still apply. Ms. Jones, can I take you back to the issue we discussed before about the waiver of the bite mark evidence? I've cited Appendix 137 and you came back with 129, I think. Yes, let me go to that. Yes. What? It's the same document. If you look at 137, the language I cited, it's the concluding paragraph in the very same document. So, it's the last sentence of your concluding paragraph, the very last sentence begins with the word finally on page 20 of the document, which is 136 of the record. Your Honor, I do see that now. I saw the concluding page and didn't think that was the page, but now I see your sentence. Candidly, it seems inconsistent with my prior allegations, my prior pages. So, I'm wondering if that was a misprint. But on 122 and on 133, we speak to some of these issues. I think it's on 133 as well. But why shouldn't we? I mean, that's a pretty straightforward statement where you say that which page do you look at? I'm looking at 137 of the record, which is page 21 of this document. And the document is the you're looking at the conclusion. It's the conclusion of the complaint, I guess, right? And I think your Honor, if I read that, I think we meant it to be a negative. Because if you go to the context of 129, we again, in the substance of the brief, reflect at the end of the first full paragraph that there is nothing more than conclusory language with respect to the bite mark evidence. And so, as we go through it, I think... Your Honor? Yes. All right. Let me just pull that up. So that was a misstatement? As I read it now, and I'm embarrassed by that. But let me just go through here. Because our arguments continue through the appellate briefs to reflect that the sort of qualified immunity issue is clear. That the bite mark evidence... It just seemed like you weighed it with respect to the bite mark evidence because your argument in your concluding paragraph is that none of this should go forward except the bite mark evidence. Right. Which doesn't sound like the defense lawyer that I am, right? But hey, look, it's Abe Lincoln 101. Abe always said, you know, you concede five or six points, then you get a lot of credibility with the court. So then on the case, right? Well, that's why I wasn't arguing the municipal liability thing today. Can you direct our attention on appendix 129, the specific line that you're relying on? Because I'm not sure which one it is. Yeah. In the first full paragraph on page 129, the final sentence reads that the plaintiff's second complaint engaged in wordsmithing to plead the agreement in understanding, and therefore the claim remains nothing more than conclusory devoid of anything supporting the agreement. Now, that was more specific to the conspiracy claim. So I see the court's position on that, why it might be confusing. We also believe that frankly, the... I'm sorry. I'm sorry. I was going to say just maybe send us a letter. I'm happy to do that. I'm happy to make that clear. And if I realize the concession, I will obviously include that. All right. That's a great idea, Judge Rendell. Why don't you submit us a letter within five days, Ms. Jones, on this issue. And if you don't concede the point, then Mr. Culleton will give you three days to respond, okay? Okay. Thank you, Your Honors. Thank you, Your Honors. All right. Any other questions for Ms. Jones from Judge Fisher or Judge Rendell? No, nothing. No, thank you. Any final... You want to sum up, Ms. Jones? Do you have anything that we didn't address? Your Honor, I think... No, no, no. I appreciate that. And I think I did raise the specific points on prosecutorial immunity and qualified immunity. We just believe those critical immunity defenses for government officials are worthy of consideration on the merits at this stage. Very good. Okay. All right. Well, the only thing we know for sure is that you all have more work to do on this case, but we'll have to figure out exactly what that looks like. So, we will do the best we can as quickly as we can. We'll take the matter under advisement, and we are very grateful to you both for the excellent argument and brief, especially under these circumstances. So, hopefully next time we'll see you both in person.